**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0016-21

JOSEPH PILEGGI and
LORETTA PILEGGI,

      Plaintiffs,

v.

ZONING BOARD OF
ADJUSTMENT OF CITY
OF NORTH WILDWOOD
and CITY OF NORTH
WILDWOOD,

      Defendants.

_____

KEVIN CASSIDY,

      Appellant.

_____

JEFFREY BOWLEY and
ELISA BOWLEY,

      Respondents.

_____

Submitted May 24, 2022 – Decided June 22, 2022

Before Judges Currier and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Cape May County, Docket No. L-0323-09.

Anthony J. Harvatt II, attorney for appellant.

Cohen Seglias Pallas Greenhall & Furman, PC, attorneys for respondents Jeffrey and Elisa Bowley (Alexander F. Barth and Michael I. Schwartz, on the brief).

PER CURIAM

Kevin Cassidy appeals from the trial court's denial of his motion to intervene in this long-running zoning dispute in North Wildwood. We affirm the trial court's decision.

I.

In January 2009, Joseph and Loretta Pileggi filed an application for construction permits, including a lot area variance, with the North Wildwood Zoning Board (Board) seeking the right to construct a home on two adjacent lots they owned. Cassidy, who owned land next to the adjacent parcels, publicly opposed the application at the Board hearing. After consulting with its solicitor, the Board decided that it would not enforce its ordinance establishing minimum lot area requirements because of the unique topography at the Pileggis' site. Next, the Board denied the Pileggis' application, citing

public safety concerns about an abutting municipally owned paper street which they deemed too narrow to meet emergency vehicle ingress and egress requirements.

In May 2009, the Pileggis filed an action in lieu of prerogative writs in the Law Division, appealing the Board's decision. A Law Division judge issued an order in January 2010 reversing the Board's denial. After a hearing, the court concluded that the Board's denial was arbitrary, capricious, and unreasonable. It specifically found that safe alternatives for emergency vehicle ingress and egress existed, and that the municipality controlled the width of the abutting street, not the Pileggis. The court also concluded that the Board had waived its lot area variance requirements, and it was barred from using them as a basis for permit denial. The court ordered issuance of the construction permits, and the Board did not appeal the order.

The Pileggis' lots lay dormant until Michael and Jamie Sperduto agreed to buy them in 2018. The Sperdutos applied to the Board for fresh construction permits in order to build their home on the lots. The Board denied their application for permits without a hearing. In November 2018, the Sperdutos filed a motion to enforce litigants' rights in the Law Division, appealing the Board's decision. A second Law Division judge remanded the

3

matter to the Board for a public hearing and a vote in order to ensure a complete record on appeal.

At the March 9, 2020 Board hearing, Cassidy again opposed issuance of the permits. Despite being presented with the January 2010 order compelling the issuance of permits, the Board denied the Sperdutos' application. The Board once again cited public safety concerns regarding access for emergency vehicles.

At the Law Division hearing, the Board repeated its 2010 arguments, public safety concerns and the lot area variance. On July 29, 2020, the trial court rejected the Board's arguments, citing the 2010 order and compelling issuance of the permits. The Board did not appeal the order, and neither did Cassidy.

Ultimately, the Sperdutos elected not to purchase the property, so the Pileggis relisted it for sale. Given the 2020 final order from the Law Division, the Pileggis advertised their lots as having valid building permits. Respondents, Jeffrey and Elisa Bowley, relied on these approvals when they agreed to purchase the Property. On January 15, 2021, the Bowleys closed on the lots, took title, and recorded the deed in Cape May County. The following

day, they sent a letter to Cassidy informing him of their purchase and intent to construct a single-family home.

On April 28, 2021, Cassidy filed a motion to intervene, seeking to vacate the trial court's order and reopen the 2020 litigation so that he could argue against issuance of the permits.[1] He did not provide notice to the Bowleys regarding the motion, despite being instructed by the court to do so in a case management conference. The Bowleys learned about Cassidy's motion after confrontation between Cassidy and the homebuilder at the site. They immediately retained counsel and opposed the motion to intervene.

The court heard argument on August 4, 2021, and found that: (1) the action Cassidy sought to intervene in, the Spurdutos' Motion to Enforce Litigants' Rights, became final as of July 29, 2020, nearly one year before; (2) Cassidy knew of the Bowleys' intention to build on the disputed lots no later than January 16, 2021; (3) the Board had litigated Cassidy's interests in 2010 and 2020; and (4) prejudice would accrue to the Bowleys if the court granted intervention. With these findings, the court found Cassidy's motion untimely under both <u>Rules</u> 4:32-1 and 4:33-1 and denied the motion.

---

[1] On April 8, 2021, the Bowleys filed motion for emergent relief to intervene and appeal out of time before us. We denied the application on April 13, finding it premature where Cassidy had no matter pending on appeal.

A-0016-21

On appeal, Cassidy argues that the trial court's factual findings and legal conclusions were "unsupported," and that it committed error when it denied intervention.  The Bowleys urge this panel to affirm the trial court's decision because the court, in examining the record, properly found Cassidy failed to satisfy the requirements of Rules 4:33-1 and 4:33-2.

II.

Rule 4:33-1 governs intervention as of right.  "To satisfy the rule, a moving party must (1) claim an interest relating to the property or transaction which is the subject of the transaction, (2) show [that the movant] is so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest, (3) demonstrate that the [movant's] interest is not adequately represented by existing parties, and (4) make a timely application to intervene."  N.J. Dept. of Env't Prot. v. Exxon Mobile Corp., 453 N.J. Super. 272, 286 (App. Div. 2018) (alterations in original) (internal quotation marks and citations omitted).  Rule 4:33-1 "is not discretionary, [so] a court must approve an application for intervention as of right if the four criteria are satisfied."  Ibid. (quoting Meehan v. K.D. Partners, L.P., 317 N.J. Super. 563, 568 (App. Div. 1998)).  As such, we review a trial court's interpretation of Rule 4:33-1 de novo.  Id. at 285.  However, a court's findings

6

with regard to timeliness under Rule 4:33-1 are reviewed for abuse of discretion. Am. Civ. Liberties Union of N.J., Inc. v. Cnty. of Hudson, 352 N.J. Super. 44, 64 (App. Div. 2002).

Rule 4:33-2 governs permissive intervention. This rule "permits intervention '[u]pon timely application . . . if the claim or defense and the main action have a question of law or fact in common.'" Exxon Mobil Corp., 453 N.J. Super. at 286 (quoting R. 4:33-2). "The decision to grant or deny permissive intervention vests considerable discretion in the trial court[,] . . . thus we review the court's determination of a permissive intervention motion under an abuse of discretion standard." Ibid. (alteration in original) (internal quotation marks and citations omitted).

## III.

We start our analysis by recognizing that this zoning dispute has been litigated to conclusion twice. The Board did not appeal either the 2010 or 2020 adverse decisions. We focus our attention on Cassidy's attempt to intervene.

Cassidy raises two main points in support of intervention. First, he argues that his motion to intervene should be granted because he has standing as a property owner within 200 feet. Second, he asserts his appeal was timely,

7

given he diligently pursued the application and acted in good faith. To support his due diligence argument, Cassidy points to his participation at the Board hearings. He also explains, by way of rebuttal to the Bowleys' delay argument, that he was not required to be notified of subsequent litigation, and that he only became aware of the 2020 final order when the Bowleys wrote to him in January 2021.

The Bowleys challenged Cassidy's argued basis for intervening. They argued that even if he was considered an interested party because he owned property within 200 feet, his interests were adequately represented by the Board at all times. They also contested Cassidy's timeliness argument, asserting that he failed to monitor for any subsequent litigation despite attending all the Board hearings and testifying at them.

The trial court found that Cassidy's intervention motion was untimely. The court rejected Cassidy's claim that he was unaware of the litigation, finding instead that he knew "about this issue all along" and "actively participated before the [B]oard both in the initial litigation, . . . [and] the second time as well." The court also found that Cassidy "elected not to participate" or "follow through or monitor the litigation." We find the trial

court had ample evidence in the record from which to conclude that Cassidy's motion to intervene was untimely.

For completeness under Rule 4:33-1, the trial court also found that Cassidy's interests were adequately represented by the Board. Cassidy had appeared at the public hearing to present opposition in 2009 and 2020. On both occasions he raised public safety vehicle ingress and egress issues, one of the same issues presented by the Board to justify permit denial. The court found that Cassidy, knowing the Board's position, elected to rely on the Board to protect his legal interests and took no action himself. The record again supports the trial court's findings, and we discern no abuse of discretion.

As to permissive intervention, in addition to finding Cassidy's actions untimely, the court balanced the equities and considered "the importance of time lines (sic) involving prerogative writ cases." The court concluded that intervention at this post-judgment stage of the litigation would be inequitable. The court emphasized the protracted nature of the zoning dispute, and it noted that each Law Division order fashioned relief favorable to the Pileggis and their successors-in-interest. The court also considered the Bowleys' reliance on the previous court orders. It gave "significant weight" to the Bowleys' actions, including their lot purchase, and starting construction, and it found

9

they were "consistent with the [c]ourt rulings and . . . determinations in this case." Ultimately, the court found that permitting intervention would prejudice the Bowleys and would not be "consistent with the type of intervention that should be granted by the [c]ourt . . . [p]articularly in the context of [a] prerogative writ action . . . where third parties are relying on the permit and approvals." We agree with the trial court's analysis.

The record contains more than sufficient credible evidence in the record to support the trial court's findings with regard to timeliness, adequacy of representation, prejudice, and adjudication of rights. We conclude that the court properly interpreted Rules 4:33-1 and 4:33-2, and also appropriately exercised its discretion to deny the motion to intervene.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0016-21